# Lewis *v.* Fleer, Appellant.

*Damages—Deliberate shooting—Trespasser—Punitive damages.*

Where a landowner observing a boy trespassing on his land deliberately goes into his house, secures a deadly weapon, and when within killing distance shoots twice at the boy who is unarmed, and is going away from him at the time, he is guilty of such wanton recklessness, vindictiveness and willful cruelty as will justify a jury in assessing punitive damages against him.

*Evidence—Infants—Jury.*

Where one has within himself the power to produce evidence of a particular fact in his favor, the jury may infer that if it were produced it would be unfavorable to him.

Argued Nov. 21, 1905.    Appeal, No. 90, Oct. T., 1905, by defendant, from judgment of C. P. Delaware Co., March T., 1904, No. 206, on verdict for plaintiff in case of Ernest Lewis, by his next friend, Oliver Lewis, and Oliver Lewis v. Frank H. Fleer.   Before RICE, P. J., BEAVER, ORLADY, PORTER, MORRISON and HENDERSON, JJ.   Affirmed.

Trespass to recover damages for personal injuries.   Before JOHNSON, P. J.

The court charged as follows :

This is a suit by Ernest Lewis and his father, Oliver Lewis, against Frank H. Fleer to recover damages for injuries which

he says he received by reason of a shot, rifle shot or gun shot, in which the bullet struck him in the thigh.

[One of the great questions in the cause is : Did this defendant fire this shot? If he did, there is no dispute, serious dispute, that it struck this boy. And the other questions will be, one of how much will compensate him for the injury and whether or not Mr. Fleer shall be punished by punitive damages because of his wantonness in the use of this pistol or gun or rifle, whatever it was.] [1]

[Take up the question first : From the evidence in this case, are you satisfied that the defendant fired this shot? The two boys,—Lewis, who is the plaintiff, says that he did. And you have heard what he said about whether or not this was the defendant. Mr. Fleer denies that he fired the shot, and says that from some evidence which he has received from others, as I understand from the counsel, he was not there until eight o'clock.

So that there is really a conflict of testimony between Mr. Fleer and the plaintiff, in which one says Mr. Fleer fired the shot and Mr. Fleer virtually says he did not. Both of these persons are interested in the outcome of this lawsuit and in passing upon the weight to be given to their evidence you ought to take that into consideration. And this is especially true where there is a direct contradiction between the two.

The other lad—I have forgotten his name—Malin, appears to have no interest in this controversy at all. He says he was present. He says he knew Mr. Fleer, and that he saw him fire the shot. He says he had seen him at Lansdowne, Darby, at his home before, seen him since, seen him here, and knows that it was Mr. Fleer.

So that is passing upon this question of whether or not it was Mr. Fleer, you have to pass upon the weight of the evidence. And the court says to you that you should take into consideration the fact in weighing the testimony of the defendant and the testimony of the boy, Lewis, that both are interested in the outcome of this suit.] [2]

[Mr. Fleer says, if I remember, that he did not fire at all on that day. Is that a fact?

Mr. Robinson : That is right. He says he has no rifle.

Mr. Smedley : He says he had a rifle.

The Court: Which fired a—in which was used a ball of this size.

So that in passing upon the question you will take into consideration all the evidence in the case, and you will bear in mind, too, that this firing took place in August. As I under-derstand, Mr. Fleer's attention was not called to it until the next April—eight months after it took place. And in passing upon this question as to whether or not he did fire this shot on this day, because he admits he was accustomed to shooting, he says, a shotgun—this ball might have been shot from a shotgun—shooting a shotgun, using a shotgun, shooting at; I believe he did not say who, boys probably, and that his attention was not called to it until eight months afterwards—whether he is able to say, because he says his recollection of it—he did not recollect it himself, as I remember, but that his attention was called to it by someone else.] [3]

[Now, that has a very important bearing upon this case. This statement informed Mr. Fleer that this shooting took place on August 13. And if he did have evidence beside his own that would contradict it, it was very important that they be here. And while there is no presumption against him on that account, yet it is a principle of law where one has within himself the power to produce evidence of a particular fact in his favor, the jury may infer that if it was produced that it would be unfavorable to him. That is as far as it goes. There is no presumption against him on that account.] [4]

[So that in taking into consideration who is mistaken upon whether or not he did fire this shot on that day, take into consideration the fact that both the plaintiff and the defendant are interested, take into consideration the fact that one of the witnesses has no interest, and also that Mr. Fleer did not have his attention called to this until eight months afterwards, which would increase the difficulty of his recollection of the particular day.] [5]

If you find that he did not fire this shot, that is the end of the plaintiff's case, and you need go no further. If you find that he did then take up the next question: Did it strike this boy? If it did, what will compensate him? First: What will compensate his father? He is entitled to be paid the money that he has expended. It appears to be $25.00 or $30.00. I

do not remember what the exact amount was from the evidence. And if you find for the plaintiff you may allow the father whatever he has expended for medicine and doctors' bills. There does not appear to be any other expenditure, I believe.

Then take up the next question : The lad is entitled to be compensated for his pain and suffering. He does not appear to be permanently injured. At least there is no evidence from which the jury could reasonably infer that he is. But he will be entitled, if you shall find in his favor, to be compensated for the pain and suffering that he has endured, discomfort. There is not very much evidence on that subject. Very little. But it will be for you to say what will compensate him for the pain and suffering, if you shall find in his favor, that he has endured. We can lay down to you no rule by which you can measure that. It will be for you to say what would reasonably, adequately compensate him under the circumstances for the pain and suffering which you shall find he endured.

[You may also take up the next question which has been argued to you.

Whether or not you shall award to this plaintiff anything by way of punishment of the defendant.

There are two kinds of damages. One is what is called damages for compensation. It compensates the plaintiff for the loss he has sustained. And the other, the courts call it punitive damages, damages by way of punishment. That can only be awarded where the act is wantonly done.

So that if you shall find that the plaintiff is entitled to recover, you may punish the defendant for his wantonness if you find that he did wantonly injure this young man.

And in passing upon that question you will take into consideration that this was a deadly weapon, if he did shoot, and that he fired twice. And both boys, one at least, says he aimed directly at the boy he shot, that was struck. So that it does have in it the element of wantonness. Because it is a crime in Pennsylvania to point a weapon, a loaded gun, at another.

So that in passing upon this question, first take up the question of whether or not this defendant fired this shot. The burden is on the plaintiff. He must satisfy you that he did. If from all the evidence in the case you are satisfied that he did not, that is the end of it. If you are satisfied that he did,

then compensate the father first for the money he has expended. Next, the boy for the damages he has suffered. And if you find from the evidence this shot was wantonly fired, then you may add to your verdict by way of punishment whatever you think—if you find it was wantonly fired—is necessary to punish him for his wanton act.] [6]

The plaintiff has asked us to say to you:

1. The plaintiff asks the learned court to charge that if the jury finds that the shooting in this case was wanton or vindictive or malicious and cruel then the verdict should be for such a sum as would be a proper punishment for the unlawful and cruel act. *Answer:* That is affirmed. That is what we have said to you in the general charge. [7]

Verdict and judgment for Ernest Lewis for $400 and Oliver Lewis $27.50.

*V. Gilpin Robinson,* for appellant.—It is the province of the jury to reconcile, if possible, apparent inconsistencies and contradictions in the testimony of witnesses, and where there are such inconsistencies and contradictions, it is improper for the court to suggest that the case turns solely on the veracity of a particular witness: Fullam v. Rose, 160 Pa. 47; Richards v. Willard, 176 Pa. 181; Murphy v. Jones, 6 Atl. Repr. 726; Reel v. Martin, 12 Pa. Superior Ct. 340; Stuart v. Line, 11 Pa. Superior Ct. 345; Urias v. Penna. R. R. Co., 152 Pa. 326; White v. Black, 14 Pa. Superior Ct. 459; McCabe v. Philadelphia, 12 Pa. Superior Ct. 383; Hayes v. Penna. R. R. Co., 195 Pa. 184; Reichenbach v. Ruddach, 127 Pa. 564; Fineburg v. Ry. Co., 182 Pa. 97; Young v. Merkel, 163 Pa. 513; Heslop v. Heslop, 82 Pa. 537.

The court erred in its submission to the jury of the question of exemplary damages: Robison v. Rupert, 23 Pa. 523.

*Garrett E. Smedley,* with him *Henry L. Broomall,* for appellee.—Where there is any evidence of aggravation, wantonness or vindictiveness the question of punitive damages should be submitted to the jury, the appellee cites: Nagle v. Mullison, 34 Pa. 48; Hawes v. O Reilly, 126 Pa. 440.

OPINION BY ORLADY, J., March 12, 1906:

The plaintiff was shot in the hip while he was trespassing on

the property of the defendant, whose denial of causing the injury was as positive as it could be made, not only that he did not shoot at the plaintiff, but that he was not at his home when the shooting occurred. On the other hand, the plaintiff, and a friend who was with him at the time, testified just as directly and positively that the defendant shot at them twice while they were going away from him, and was but forty rods distant from them at that time. The occurrence happened in clear daylight, and the defendant was directly identified by these two witnesses. We have nothing to do with their credibility, and must accept the verdict of the jury as establishing their version of the transaction.

The plaintiff requested the court to say to the jury: "if the jury finds that the shooting in this case was wanton or vindictive, or malicious or cruel, then the verdict should be for such a sum as should be a proper punishment for the unlawful act," which was affirmed. The other assignments of error relate to detached parts of the charge of the court.

The boys were trespassing upon the defendant's property, and, as on former occasions, had been taking apples. While they were defiantly violating the law, the legislature in its wisdom has enacted statutes which specifically measure the punishment for such conduct. Under such acts the landowner cannot determine the manner, character nor degree of the penalty to be imposed. The testimony adduced by the plaintiff was sufficient to warrant the verdict and it has met the approval of the court below in its refusal to grant a new trial. The charge taken as a whole was a fair presentation of the case. The unexplained absence of the defendant's wife would naturally be noticed by the jury, inasmuch as it was upon her recollection of his presence at Sea Isle City on the day the shooting occurred, that recalled to him the special fact that he was not at home at that time. But the court was clearly within well defined bounds in saying: "if he did have evidence beside his own that would contradict it, it was very important that they be here. And while there is no presumption against him on that account, yet it is a principle of law, where one has within himself the power to produce evidence of a particular fact in his favor, the jury may infer that if it was produced it would be unfavorable to him. That is as far as it goes. There is no

presumption against him on that account." Nor was the defendant's testimony belittled by saying: "Mr. Fleer virtually says that he did not do it." While the defendant denied that he fired the shot, and that he did not own any weapon that would shoot a bullet such as was taken from the plaintiff's body, it was also urged as a substantive fact that he was not at home at the time but at Sea Isle City with his family. Taken in connection with the context, it must have been understood ·by the jury in the same sense in which it was used by the trial judge, as synonomous with, in effect, practically, and to all intents and purposes, so that it could not mislead a juryman of average intelligence. The facts were presented without any intimation of the impression or effect they made on the court, and its general effect was to submit the disputed facts under all the evidence to the jury.

In regard to the charge of the court in defining the measure of damages, it must be kept in mind that the first and vital question was,—did the defendant fire the gun as testified to by the plaintiff and the other eyewitness? This fact found against the defendant, his other testimony would naturally be ignored, and the jury would then be dealing with the facts as thus found; a man deliberately going into his house to secure a deadly weapon, and when within a killing distance, shoots twice directly at the body of an unarmed boy who was going away from him.

Under such facts, the rule laid down by the court was amply justified by many authorities, as indicating such wanton recklessness, vindictiveness, and willful cruelty as would justify the jury in assessing punitive damages. It was the duty of the court to explain the kind of damages the plaintiff was entitled to recover, if any; and for the jury to ascertain the facts to which the instructions should be applied: Hawes v. O'Reilly, 126 Pa. 440; Greeney v. Penna. Water Co., 29 Pa. Superior Ct. 136.

None of the assignments of error is sustained and the judgment is affirmed.